podium and tell us who you are and who you represent. Please call the first case. 12-2437, Charlotte Jones, Board of Education of the City of Chicago, for the epaulette. Good morning, Judge. Curtis Hale on behalf of Charlotte Jones. Lee Lauder on behalf of the Chicago Board of Education. Very good. Each side has 15 minutes. I can assure you that we've read the briefs. We're Any time you're ready, Mr. Hale. Thank you, Your Honor. I'd like to reserve five minutes for rebuttal, if I could. Certainly. Your Honor, this is a tenure teacher dismissal matter. Ms. Jones was a teacher for the Chicago Board of Education at what's considered a selective enrollment school, McDade Classical. She's worked for the board for about 27 years. During the course of that time, she was always rated as a superior or excellent teacher, never been disciplined, and she'd been considered to be trustworthy by her current principal as well as someone who exhibited high standards of moral and ethical conduct by another past principal. During the entire period that she was here, did she ever live in the City of Chicago? An issue in this case, no. Since 1994, she has lived in South Holland. That was, in fact, her residence. But she did file through the clerk using a Chicago address. She submitted three emergency contact forms in which she listed the South Loomis Chicago address as one of her addresses. That was an address where she had grown up. Her parents lived there. Her parents owned it, and she considered it to be her second home. And her husband, in 2005 and 2008, had worked for the Chicago Public Schools, and he had an exemption and then it expired, correct? Right. Yeah, he had left CPS for a little bit beforehand, and then he came back, took up a science, I'm not sure if it was science or mathematics position, which is a special needs position in the City of Chicago, which entitles you to apply for a three-year waiver of the residency policy. He got it, and you're right, it did expire at one point in time. And he also, during that entire period of time, 12 years or more, they lived in South Holland. Yeah, they both lived in South Holland, and they lived there with the two children at issue here. And the clerk was asked to override the system so that they could enter a Chicago address because it wouldn't take the address because it was supposed to be a South Holland address. Well, in 1999, when Ms. Jones enrolled her daughter, Desiree, at the school, on the application in the enrollment form, she testified she initially used the South Holland address. Into the school year, when the daughter was in first grade, the clerk approached her and said, there's something wrong, the computer's not accepting your South Holland address. Don't you have a Chicago address, your parents' address, where you live? And she said yes. And that's what you're referring to, yes. And that's because she gave her parents' address where she did not live and her children did not live, so in order that the computer would now accept her child as a first grader in a selective enrollment class in Chicago. Is that right? So that the paperwork could be completed, yes. Otherwise, she would not have been able to enroll. Had she not given an address where her children did not live, her child would not have been allowed to enroll. The computer system would not have allowed the child to be enrolled at the school. That's correct. Your whole case hinges, does it not, Mr. Hale, on Jones' defense that she didn't know that to attend a school in Illinois, it's done by residency, and therefore when her child went to first grade, she was not a resident of the Chicago Public School District, which Ms. Jones knew. She just didn't know, your client didn't know, that she couldn't bring her child into a different school district and attend at that school. This school is a special school. Most Chicago schools you can attend if you're a non-resident. Really? Can you cite a statute for that proposition or a case for that proposition? I can't cite to a case, Judge, but most of the schools you can attend, but it's not tuition-free. You have to pay non-resident tuition. What I'm saying is that in a DADE, you have to be a resident to attend that school. So let's go to that. So let's take it, then, from what you've just said, that your client knew that if she was going to have her non-resident child attend, she would have to pay tuition. Is that what you're suggesting? My client believed that because she was grandfathered in under the residency policy, meaning that she did not have to live there and that her husband had a special needs waiver, that since that meant he did not have to live there, that it applied to her children as well and that her children could attend a CPS school. Didn't that change in 1999 with the change of the rule? Which rule are you referring to? I'm sorry. There was this change in the residency rule that would have applied to them in this case. The residency policy to my client is that if she's lived outside the city of Chicago since November of 1996, she's grandfathered in. The policy doesn't say if that applies to children as well. Right. However, the statutes do, right? State statutes provide and have since the turn of the last century, since at least in the early 1900s, probably well into the 1800s, that you must attend school. The school districts are obligated to provide free schooling for children who reside within their districts. And children who do not reside within those districts must pay tuition to the districts where they do not live but wish to attend. Would you agree with that? Yes, that's correct. That's what the school code says as well, yes. And therefore, even though, as Justice Simon mentions, this is in both briefs, that the school's CPS adopted an amended residency requirement of some kind in 1999, that didn't change the state statutes put in effect for over 100 years requiring non-resident students to pay tuition if they wish to attend a district other than where they reside. That's correct. The residency policy waiver did not change that statute. That's correct. What happened with the $125,000 tuition bill? I have no idea, Judge. I don't know if they've moved to enforce it. I'm not sure if they've filed a civil action to enforce it. Sometimes they do. Sometimes they don't. I can speculate. I don't know. Sometimes they assign it out to a third party to try and collect. So they get between 200 to 500 applicants for this special school year and they only take 5%? Well, at the school, there are two types of entries. One is the initial entry, and that's for kindergarten. They take about 28 positions for kindergarten. For everybody else, it's a secondary entry for first through sixth grade, and it's based upon how many vacant positions are there. And I think the testimony application was that there were 600 to 700 applications for all the schools in Chicago that are selective enrollment schools. So the knowledge of how selective this school was in the 29 years that she taught, you're saying that your client had no idea whatsoever about the requirement of living in Chicago in order to go to that school? That's not what I'm saying, Judge. What I'm saying is that while she might have known that the requirement was there, she believed in her mind that her residency, her waiver, applied to her kids. Counsel, can we ask you about the standard of review? There was a hearing officer that made certain factual findings, and then the Board of Education made findings as well. What exactly are we reviewing here? I believe this is a de novo standard review, Judge. The Board of Education found... Of whose decision? You're reviewing the Board of Education's decision. However, with credibility findings, which were made in this case under the case of Hedgener, those are basically decisions made by the hearing officer, the person who sat in there, Ms. Wayland. Right, because there's a lot of discussion in the briefs about the hearing officer's rulings, but we're not really reviewing that right now. That's right. We're reviewing the Board of Education's decision in which they said that Ms. Jones engaged in irremediable per se conduct. We believe that that was the wrong standard to apply in this case, that they should have applied Gilliland. Right, but let me ask you about the de novo. All aspects of this is de novo review? Regarding whether or not it's remedial conduct is de novo. That's correct. So construction of the statute is de novo? Correct. And what about the findings of fact? The findings of fact are usually manifest way to the evidence. In this case, the hearing officer, Ms. Wayland, made findings of fact and found against her client on every finding of fact other than whether or not your client owed money to the Board of Ed. Is that right? Well, she found that my client submitted three emergency contact forms with the South Loomis address. She did not find that my client submitted the registration cards. And based upon the finding that she submitted those emergency contact forms, she said that basically she committed, I think it's a violation of Part 4-17, I'm not sure what that is, that she submitted a false employment record. And let's go back to the registration cards. Where did those indicate that the children lived? They indicated it to be, I think it's 11734 South Loomis. For Chicago, right, in Chicago rather than where they actually lived. But we don't know who filled those out. Oh. Going back, you argue in your brief that there was no harm done, there was no damage to any students. Is that correct? I believe that there was no harm done. While the Board does state that there possibly were positions that could have gone to other students, we don't know how many positions were actually filled. How many would they need to show? So children in Chicago applied, 95% were turned down, which is every year, and at least two of the positions, which theoretically would have gone to Chicago children, went to South Holland children. Right? That's right. And there's no question, that absolutely occurred, those are the facts of the case. Two of the children who, from Chicago, were deprived of these, a possibility of attending this wonderful school, they're not harmed by that? You're right. Two positions went to these students. We don't know if those were two of the allotted 26 positions for each of those grades or if maybe a special 27th position was created for these students. There's nothing in the record to indicate how many students were actually in that first, second, third, through sixth grade classroom. Did the record indicate whether or not these children tested in or were they given, let in by the principal's exemptions? My client testified that they took the test. Did she say whether she did well on the test? There is nothing else in the record other than my client's testimony. All we know is that she submitted the application, the kids tested, they enrolled. And the application was false though, right? The application, whoever, did she submit the application? She submitted the application, yes, with the South Holland address. And at the time you submit your application, you do not have to be a resident of the city of Chicago. Right, but then somebody submitted registration cards, which were false. Well, enrollment documents is what it would be. Enrollment documents were submitted by her and she said she used the South Holland address. It later, with the school clerk, came and said the computer system's not accepting it. We never actually saw the enrollment documents. We don't know what happened to them. They're not in the record. There was a grandfathering for change for teachers on residences, but nothing in the rules transfers that right to a pupil. There's nothing in the rules that transfers the right to a pupil. The residence probably doesn't mention it. My client just mistook it. She thought that it applied to her kids. Counsel, what's the basis for appellate jurisdiction here? Why didn't you go to the circuit court? The school code was amended back in 2011 to take initial reviews out of the circuit court and go to directly appealable to you guys. Do you cite that, what section that is? It's 3485B. But it's not in the brief. No, it's not in the brief. I don't think the parties disputed your jurisdiction. But you're required. I'll just let you know. I'm sorry. It's a requirement. You explain jurisdiction in what's called a jurisdictional statement, the first thing you're required to do in your brief. Neither side did that. Can you cite a case for the proposition that it's okay for people not to be aware of the law and go violate the law, and then that's forgiven? I cannot cite to a case, but under the criminal code, it is a defense if there's a mutual mistake of fact or law to deprive someone of the intent element of crime. And in this case, that's what we argue that my client. But you're not charged criminally, correct? Right. The board agreed in their brief that there was no criminal action or no crime that she committed that they saw her dismissal for. They basically said it was immoral and thus irremediable per se. And they also tried to add in a few other things that they said resulted in irremediable per se conduct, which the school code doesn't include as, per se, irremediable conduct. Counsel, as far as the Gilliland decision that you cite, that was in 1977, wasn't it? Yes, it was. Supreme Court in 77, yes. And the issue of notice under that ruling, wasn't that changed by the statute or the legislature in 1995 as far as written warnings? You're right. It was changed for certain conduct, conduct which is immoral, cruel, criminal, negligent, or which in any way causes psychological or physical harm to a student. And that's why the board in its decision relied upon what it considered her immoral conduct. And your argument is that this is not immoral? That's right. This is not immoral as this Court's defined the term in Ahmad v. Chicago Board of Education. Do you have anything else? Do you have five minutes to reply? No, I don't. Thank you, sir. All right. Thank you, Judge. See you in a few minutes. Counsel? Judges, an applicant has a better chance of getting into Harvard than getting into McDade Academy. In the most recent class of Harvard, 5.9 percent of the applicants were admitted. At McDade in the last school year, there were 500 to 600 applicants for 28 slots, which works out to be 4.6 to 5.6 percent. The reason it's immoral here for this teacher to have taken these slots, not only two at McDade but also one at Morgan Park High School, which is also selective enrollment school, is because three kids in Chicago whose parents paid taxes who live in Chicago didn't get those very valuable seats. That's why we believe that it was immoral what Ms. Jones did. The hearing officer actually found that she submitted one registration form and two emergency contact forms. The hearing officer found that. One registration form, two emergency contact forms listing this address in the south of Chicago. She conceded on the record she didn't live there, she didn't pay rent there, her name wasn't on the mortgage. I don't know how the hearing officer could really find that she really believed that it was okay for her to use that address, because if she really believed that, then why on the registration card and why on the two emergency contact forms would she have used the Chicago address? It's true that she applied with the South Holland address, and that was perfectly fine. You can do that. You just have to move into Chicago if your kids get accepted into a selective enrollment school by July 1st. Counsel, can I ask you, what's the definition of immorality that you're relying on for the conduct to be immoral? Where does that definition come from? There's one case on it that I, the Ahmaud case, that's the, and I guess just, you know, what do we consider to be immoral, what people, the general good people in society believe to be wrong. And I think most people in society would believe it's wrong for you to lie about your address to get a benefit. And that's exactly what she did here. Now, for the selective admission schools, as you just said, they have to move in by July 1. They cannot be tuitioned out, right? They can't say, well, I'm going to stay in South Holland, but I'm glad they're paid the right to a check for whatever the amount would be. Not in a selective enrollment school, no. I mean, there are just too many people who want to get those slots. There are only two classical schools on the entire south side of Chicago, two. So those are really, you know, people want to get into those. And that's found in the statute or in the, is that in the statute or in the regulations? That you can't be tuitioned out. You're right, that you're not eligible to be offered to pay. That it won't help to offer to pay since you're not allowed in. Well, you have to test to get in. So I suppose if you test it, I know. Residency is an absolute requirement, though. There is no ability, if you are not a resident of the city of Chicago, to attend one of these schools. Not in the selective enrollment schools. I believe that's in the regulations. Was Morgan Park an exceptional school? It's a selective enrollment school also, yes. And so when her daughter finished at McDade, she went into another selective enrollment school. And when she registered, when Ms. Jones registered her for Morgan Park, she put the Chicago address. So if she thought her kids were grandfathered in, why did she put the Chicago address? It makes no sense. I was going to ask you to address, your opponent makes an argument about she wasn't informed about the residency requirement for the children. Do you want to address that? Yes, Your Honor. That's a board rule. People are assumed to know the law. I cited a couple of cases about that. Ignorance of the law is no excuse. She worked for the board for more than 20 years. She was there at the school. Even the hearing officer said the competition for these slots is fierce. So I just think it's pretty incredible to think that someone who worked there for 20 years didn't know that you had to live in Chicago to get one of those slots. And even if she didn't, her ignorance of that regulation was no excuse for her failure to comply with the law. Was any disciplinary action taken against any of the people who obviously knew that these children were attending a selective enrollment school and did not live in Chicago? You're assuming that the principal knew? I do. I don't necessarily. No, not that I know of. Okay. I would wish that there were. So do I. Yes. Speaking just for myself. No, for myself too. I don't think that's right. I'm not sure that he knew, but it's a small school, which makes you wonder. But not that I know of, and that's not in the record. And there's nothing in the record indicating how the children got into the school, meaning did they test in or were they given an exemption? Yes, that is in the record that they tested. You have to test to get into those schools. So does that suggest you pass the test if you are tested? Yes, you have to be in the top stain line in order to get into a selective enrollment school, like the top 99% of kids. Well, this being a grammar school, there were no principal's exemptions like there are for Walter Payton and the others, which were a scandal about two years ago. But those particular schools, you don't need to test in. The principal gets to pick free agents apparently. That does not exist for grammar schools? I don't know. At that time in 1999, I don't know if that existed. I can submit something to you if you'd like. I know they don't do that now, and I think it was wrong when they did that. If you have any other questions, I think it's clear that she acted immorally. I'm sorry we didn't do the jurisdictional statement. I thought that he put that it was a final decision of the board. The final decisions of the board under 3485, Section 105 ILCS 53485, now go directly to the appellate court. We'd asked for that change in the statute because it was taking so many years to get through the chancellery division that the back pay was really piling up. Wow. So we asked for that change, and that's why it was made. Well, we're glad for the work. Thank you. Thank you. Mr. Howell. Just briefly, I've got a copy of the Ahmaud decision, which defines immoral conduct. It's conduct that's been defined by this court as shameless conduct, showing a moral indifference to the opinions of good and respectable members of the community. We feel that Ms. Jones did not engage in immoral conduct here. What she had was a mistaken belief. She wasn't doing what Ms. Ahmaud did. Ms. Ahmaud was representing herself to be a CPS administrator to get free supplies from a private organization, which she was then turning around to sell for her own profit. My client had no nefarious intent, as a term another hearing officer once said, in enrolling her students at this school. Counsel, are those separated by ors or and, the shameless indifference? I mean, does that include all that conduct or only one will suffice for a moral? It just says shameless conduct showing moral indifference to the opinions of good and respectful members of the community. Could it be argued that she showed indifference to members of the community who are entitled to have their children accepted at that school? Indifference to the opinions. Had she known that her residency waiver didn't apply to her students, her children probably would not have attended that school. Her son was eventually pulled from the school after the fifth grade, and he went to a school out in South Holland. So it's the knowledge part that's the key here. Correct. Knowledge and her intent. The principal testified, but there's no mention that the clerk ever made any, didn't testify. No. The clerk didn't testify. Ms. Ernestine Davis never did testify, no. Her testimony came in over objection of the board's attorney. It was basically, here's the objection, the hearing officer overruled it and just admitted the testimony as if she had showed up. But as you point out in your reply brief, you're not asserting that as a defense, that a clerk could somehow magically allow other people to testify. It goes to my client's state of mind, essentially, what her belief reasonably was. Okay. Anything else, Mr. Allen? No. Thank you very much, Mr. Allen. Thank you. This case will be taken under advisement.